UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MCKINLEY MOUTRY,

           Plaintiff,

v.                                       Case No. 22-cv-0070-bhl

THE TRAVELERS HOME AND
MARINE INSURANCE COMPANY,

           Defendant.

## ORDER GRANTING SUMMARY JUDGMENT

      In this lawsuit, Plaintiff McKinley Moutry seeks to recover under an insurance policy for losses he sustained when a fired burned down his second house in Jonesboro, Georgia. Moutry's insurer, Defendant Travelers Home and Marine Insurance Company (Travelers), denied coverage after investigating his claim and finding out that he did not reside at the Jonesboro property, as required by his policy's "residence premises" condition. Moutry then filed this lawsuit, alleging breach of contract and bad faith denial of coverage. When Travelers sought summary judgment on both claims, Moutry filed both a response and a motion for leave to amend his complaint. Because the undisputed facts confirm Travelers' position, its motion for summary judgment will be granted. Additionally, because amendment at this late stage would be unfairly prejudicial, Moutry's motion to amend will be denied.

### FACTUAL BACKGROUND[1]

      In August of 2015, McKinley Moutry, a resident of Milwaukee, Wisconsin, purchased a second home in Jonesboro, Georgia that he intended to occupy during the winter. (ECF No. 1-2 ¶4; ECF No. 15-4 at 9:5-20.) Shortly before closing, he called Travelers' 1-800 number and asked to add the new Georgia property to his existing policy. (ECF No. 18 at 2.) But a Travelers' representative informed him that he would need a separate policy. (*Id.*) Moutry, therefore,

---
[1] The parties agree on virtually all of the pertinent facts. (ECF No. 18 at 2-3.) To the extent disputes exist, the facts are drawn in the light most favorable to Moutry as the non-moving party.

promptly purchased a second homeowner's policy, substantially similar to the one he already had. (ECF No. 15-4 at 19:10-15.)

Under the new policy (like the old one), Travelers agreed to cover "the 'residence premises' shown in the Declarations." (ECF No. 15-1 at 18.) "Residence premises" means:

    a. The one family dwelling where you reside; or
    b. The two, three or four family dwelling where you reside in at least one of the family units;
and which is shown as the "residence premises" in the Declarations.

(*Id.*) The policy's Declarations page listed Moutry's single-family dwelling located at 9013 Greystone Road, Jonesboro, Georgia as the "residence premises." (*Id.* at 2.)

Despite his initial intentions, Moutry never moved into his new Jonesboro property. In fact, he never even visited it, choosing instead to rent it out. (ECF Nos. 15 at 7; 15-4 at 13:23-14:13.) This worked well for about four years, until October 5, 2019, when the house caught fire and burned down. (ECF No. 15 at 7-8; ECF No. 1-2 ¶7.)

Seeking coverage for fire loss, Moutry filed a claim under his second Travelers' policy. (ECF No. 1-2 ¶7.) But on October 26, 2020, after investigation, Travelers denied the claim on the basis that Moutry had never resided at 9013 Greystone Road, so it did not meet the definition of a "residence premises." (ECF No. 15-8 at 2-4.) Nearly a year later, Moutry filed this lawsuit, alleging claims for breach of contract and bad faith denial of insurance coverage. (ECF No. 1-2 ¶¶13-19.)

## LEGAL STANDARD

"Summary judgment is appropriate where the admissible evidence reveals no genuine issue of any material fact." *Sweatt v. Union Pac. R. Co.*, 796 F.3d 701, 707 (7th Cir. 2015) (citing Fed. R. Civ. P. 56(c)). Material facts are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of "material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the parties assert different views of the facts, the Court must construe the record in the light most favorable to the nonmoving party. *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000).

## ANALYSIS

Moutry contends Travelers breached its contract by failing to provide the coverage it promised under its policy. (ECF No. 1-2 ¶¶13-15.)[2] Travelers argues that a plain reading of the insurance policy corroborates its decision to deny coverage. Moutry counters that a jury could conclude that he reasonably relied on Travelers' own agent to issue him an appropriate policy and thus require Travelers to provide the coverage its agent led Moutry to believe he would receive. Because the facts do not permit Moutry's proposed inference, Travelers' motion for summary judgment will be granted.

I. **Moutry's Breach of Contract Claim Fails.**

Under Georgia law,[3] "insurance is a matter of contract, and the parties to an insurance policy are bound by its plain and unambiguous terms." *Richards v. Hanover Ins. Co.*, 299 S.E.2d 561, 563 (Ga. 1983) (citing *Barker v. Coastal States*, 225 S.E.2d 924 (Ga. Ct. App. 1976)). If terms are undefined, courts may look to dictionaries to "supply the[ir] plain, ordinary, and popular" meanings. *Cunningham v. Middle Ga. Mut. Ins. Co.*, 601 S.E.2d 382, 384 (Ga. Ct. App. 2004) (quoting *Larson v. Ga. Farm Bureau Mut. Ins. Co.*, 520 S.E.2d 45, 47 (Ga. Ct. App. 1999)).

In this case, whether Moutry's Jonesboro home qualifies as a "residence premises" turns on the definition of "reside." (*See* ECF No. 15-1 at 18 (defining "residence premises" according to where the insured "reside[s]").) The policy does not define "reside," but the term has an established meaning in ordinary English. According to Merriam-Webster, "reside" means "to dwell permanently or continuously: occupy a place as one's legal domicile." *Reside*, *Merriam-Webster Dictionary* (10th ed. 1994).

Moutry has never even visited the *state* of Georgia, let alone the Jonesboro property. (ECF No. 15 at 7.) He, therefore, necessarily never dwelt permanently or continuously there. This means the Jonesboro property cannot be "[t]he one family dwelling where [Moutry] reside[s]"

---

[2] Moutry conceded his bad faith claim in his summary judgment response brief. (ECF No. 18 at 3.)
[3] While the operative insurance policy does not contain a choice-of-law provision, the parties have stipulated to the application of Georgia law. (ECF No. 18 at 3.) "When exercising diversity jurisdiction, a federal court must follow the choice of law rules adopted by the State in which it sits, including rules about whether stipulations as to choice of law are binding." *Flextronics Int'l USA, Inc. v. Sparkling Drink Sys. Innovation Ctr. Ltd*, 186 F.Supp.3d 852, 861 (N.D. Ill. 2016). "Wisconsin generally honors stipulations as to choice of law unless they conflict with public policy." *Skyrise Constr. Grp., LLC v. Annex Const., LLC*, 956 F.3d 950, 956 (7th Cir. 2020) (citing *Am. Fam. Mut. Ins. Co. v. Cintas Corp. No. 2*, 914 N.W.2d 76, 82 (Wis. 2018)). Because there is nothing unreasonable or antithetical to public policy about the application of Georgia law, the parties' stipulation will control. *See Lloyd v. Loeffler*, 694 F.2d 489, 495 (7th Cir. 1982).

within the Travelers policy's meaning, so it does not qualify as a "residence premises." (*See* ECF No. 15-1 at 18.)

But the question remains whether Georgia courts would strictly enforce the "residence premises" provision against Moutry in these circumstances. "When interpreting state law, a federal court's task is to determine how the state's highest court would rule." *Rodas v. Seidlin*, 656 F.3d 610, 626 (7th Cir. 2011) (citing *Konradi v. United States*, 919 F.2d 1207, 1213 (7th Cir. 1990)). If the state's highest court "has not yet addressed [an] issue, the federal court should 'consult and follow the decisions of intermediate appellate courts' to predict how the [highest court] would act given the chance, unless 'there is a convincing reason to predict the state's highest court would disagree.'" *Webber v. Armlist LLC*, 572 F. Supp. 3d 603, 619 (E.D. Wis. 2021) (quoting *ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Prot. Dist.*, 672 F.3d 492, 498 (7th Cir. 2012)). While the Supreme Court of Georgia has never directly addressed an insurance policy that includes the "residence premises" clause found in Moutry's policy, Georgia law would almost certainly apply the policy according to its plain terms. Indeed, Georgia appellate courts have confirmed that insurers are entitled to deny coverage based on noncompliance with nearly identical provisions. In *Epps v. Nicholson*, 370 S.E.2d 13 (Ga. Ct. App. 1988), the Georgia Court of Appeals upheld a denial of coverage where the insured did not reside at the "residence premises" identified in the policy declarations. Similarly, in *Varsalona v. Auto-Owners Ins. Co.*, 637 S.E.2d 64, 65-66 (Ga. Ct. App. 2006), the court of appeals held that because "neither insured ever used the property as a residence," they had not satisfied the "residence premises" provision of their insurance policy. The court in *Georgia Farm Bureau Mutual Insurance Company v. Kephart*, 439 S.E.2d 682 (Ga. Ct. App. 1993), also found no coverage where the insured did not reside at the "residence premises" as required by their policy. The Supreme Court of Georgia lent at least some indirect support to these interpretations in *Roland v. Georgia Farm Bureau Mutual Insurance Company*, 462 S.E.2d 623, 625 (Ga. 1995), in which it acknowledged *Kephart*, and generally blessed its holding while ultimately distinguishing it based on a unique set of facts not relevant here. *Id.* Other federal courts tasked with reading the writing on the wall have also concluded that the Supreme Court of Georgia would strictly construe "residence premises" clauses under these circumstances. For example, in *Mahens v. Allstate Insurance Company*, 447 F. App'x 51, 55 (11th Cir. 2011), the Eleventh Circuit Court of Appeals, which sits in Atlanta, applied Georgia law and upheld a denial of coverage because the insurance policy "language plainly and unambiguously

required [the insured] to reside at the property listed on the policy," and the insured had not done so. *See also Lyons v. Allstate Ins. Co.*, 996 F. Supp. 2d 1316, 1320-21 (N.D. Ga. 2014) (insured who stayed at dwelling a few times a year did not reside there, and coverage for fire damage was barred under the "residence premises" provision). The Court therefore concludes that Georgia law requires strict application of "residence premises" provisions in insurance contracts.

Moutry attempts to evade this conclusion, citing recent decisions holding that an insurer is not entitled to summary judgment "when [its] insurance agent 'has undertaken to perform an additional service,' beyond merely procuring specified insurance, 'such as determining the amount of insurance required, and the insured relies upon the agent to perform that service.'" *Cottingham & Butler, Inc. v. Belu*, 774 S.E.2d 747, 750 (Ga. Ct. App. 2015) (quoting *Fregeau v. Hall*, 396 S.E.2d 241, 242 (Ga. Ct. App. 1990)). As Moutry now tells it, the Travelers' representative he spoke to on the 1-800 line was an "agent" who went beyond procurement and led him astray. But he has no evidence of this. According to his own testimony, Moutry only asked the representative to add his new home onto his current policy. (ECF No. 15-4 at 11:10-12:15.) The next he remembers, he "got a policy in the mail." (*Id.* at 19:10.) He never explained his intentions for the Jonesboro property, (*id.* at 18:15-22), nor did he detail what kind of coverage he wanted. (*Id.* at 13:3-14.) He intimated a desire for a policy substantially similar to the one issued on his Milwaukee home. (*Id.* at 19:4-8.) That is precisely what he got. This is not a situation where an agent "held himself out as an expert and the insured . . . reasonably relied on the agent's expertise to identify and procure the correct amount or type of insurance." *McCoury v. Allstate Ins. Co.*, 561 S.E.2d 169, 171 (Ga. Ct. App. 2002) (quoting *Hunt v. Greenway Ins. Agency*, 443 S.E.2d 661, 662 (Ga. Ct. App. 1994)).

Moutry's situation is simply not analogous to that of the insureds in *Belu* and *McCoury*, the cases he cites to argue for application of the reliance exception. In *Belu*, a business owner called an insurance company, described the nature of her work, and enumerated the inventory to be covered. 774 S.E.2d at 749. She relied on the insurer to recommend the appropriate coverage, *id.*, and received repeated reassurances "not to worry because she was 'covered.'" *Id.* at 751. The Georgia Court of Appeals held that the "evidence raise[d] questions of fact as to whether the agency went beyond mere procurement and offered expert advice upon which the [insured] relied." *Id.* In *McCoury*, the insureds presented evidence that they requested a policy guaranteeing full repair or replacement of their dwelling. 561 S.E.2d at 170. They "relied on [their insurance

agent's] expertise in determining that . . . policy coverage of $225,000 for protection of the dwelling was adequate." *Id.* at 171. The dwelling later sustained $300,000 in damages, and although the insureds had not complied with certain express provisions of their policy, the court of appeals refused to grant the insurer summary judgment because its agent "held himself out as an expert" and the insureds "reasonably relied on the agent's expertise." *Id.* at 170–72. Moutry's has no evidence that he experienced anything comparable. (ECF No. 18 at 3.) And the absence of evidence is not proof; as the Seventh Circuit has emphasized: "no evidence is no evidence." *King v. Hendricks Cnty. Comm'rs.*, 954 F.3d 981, 986 (7th Cir. 2020). At summary judgment, Moutry needs to proffer something, anything, that would allow a reasonable jury to decide that he detrimentally relied on the expertise of a representative he briefly spoke to during a 1-800 call. He has presented nothing of the sort.

Moutry also confuses "residency" with "exclusive occupancy." He questions how any reasonable insurer could offer a client two policies that both contain "residence premises" clauses. (ECF No. 18 at 5.) The answer is that "a person may, and many people do, have more than one residence." *Travelers Ins. Co. v. Mixon*, 162 S.E.2d 830, 831 (Ga. Ct. App. 1968). Moutry might have a point if Travelers issued him two policies that conditioned coverage on exclusive occupancy of two separate properties. But that is not what happened. In fact, had he executed his original plan and wintered in Jonesboro, Moutry would have met the residency requirement and could have collected when his house burned down, even if physically in Milwaukee (or Timbuktu for that matter) at the time of the accident. *See Huckaby v. Travelers Prop. Cas. Co. of Am.*, 5:10-CV-299(MTT), 2011 WL 6300569, at *1 (M.D. Ga. Dec. 16, 2011). But he did not. And his insurer was entitled to rely on the specific terms of the policy that Moutry bought. It was not absurd for the insurer to require residency as a condition of coverage. By using the property as a rental rather than a residence, Moutry exposed himself to different risks, which (had he properly informed his insurer) likely would have necessitated a higher premium, as typically attaches to rental rather than residential properties. Thus, contrary to his assertion, there was no prima facie absurdity associated with issuing two policies containing "residence premises" provisions.

Moutry also cannot invoke Georgia's "layman" exception to insurance policy construction. Even where unambiguous language precludes coverage, Georgia courts do not grant summary judgment to insurers when the insured relies upon an insurance agent's expertise and it would not be "readily apparent to a layman reading the insurance policy, based upon the plain and ordinary

meaning of clear and unambiguous language, that the risk causing the loss was not covered." *Belu*, 774 S.E.2d at 751 (quoting *Atlanta Women's Club v. Washburne*, 427 S.E.2d 18, 20 (Ga. Ct. App. 1992)). As previously established, Moutry has no evidence that he relied upon an insurance agent's expertise in selecting his policy. Moreover, the policy Moutry executed was not drenched in legalese and deliberately impenetrable. It plainly only covered his residences. Even laymen understand that renting out property instead of living in it excludes that property from the definition of residence. Thus, the "layman" exception does not apply.

## II. Moutry's Last-Minute Motion to Amend Must Be Denied.

Recognizing the legal barriers to coverage under the policy he bought, Moutry now asks the Court for leave to amend his complaint to assert an equitable claim for reformation. (ECF No. 16.) While courts have broad discretion to allow parties to amend pleadings, it would be unfair to Travelers to exercise that discretion here, where Moutry proposes reconfiguring the case so late in the game without offering any explanation for his delay. Accordingly, the motion for leave to amend will be denied.

Under Fed. R. Civ. P. 15(a)(2), after the time to file amended pleadings has expired, "a party may amend its pleading only with the opposing party's written consent or the court's leave." "The court should freely give leave when justice so requires." *Id.* But "district courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008). "[D]elay by itself[, though,] is normally an insufficient reason to deny a motion for leave to amend." *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 793 (7th Cir. 2004). It "must be coupled with some other reason . . ., [t]ypically . . . prejudice to the non-moving party." *Id.*

Moutry contends that his proposed amendment is "simply [an attempt] to frame the pleadings to conform to the facts and evidence that have been established in this case" and will not necessitate additional discovery or jeopardize the trial set to begin on March 13, 2023. (ECF No. 17 at 3-4.) These self-serving assurances don't add up. As an initial matter, any amendment would necessarily scuttle the existing schedule and require the Court to allow Travelers the chance to file a revised motion for summary judgment, assuming the insurer is willing to forgo further discovery—potentially including a new deposition of Moutry—on the reformation issue. Moutry implies that if confronted with a claim for reformation, Travelers will chivalrously concede that

the case must proceed to trial. (*Id.* at 3.) That fantasy evaporated when Travelers filed its response brief, arguing that in addition to being late and prejudicial, Moutry's reformation claim is also futile because it rests on a unilateral rather than mutual mistake. (ECF No. 19 at 6-9.) Clearly, Travelers intends to test any new reformation theory and, to do so, it will need to commit additional time and resources to discovery, quite unfair (and unexpected) at this juncture. *See White v. Woods*, 48 F.4th 853, 861 (7th Cir. 2022).

The Seventh Circuit has consistently affirmed denials of leave to amend under similar circumstances. In fact, its "case law uniformly advis[es] that a plaintiff's leave to amend, when filed after discovery has been closed and after a defendant's motion for summary judgment has been filed, is considered unduly delayed and prejudicial." *Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 774 (7th Cir. 1995). That is especially true "where a plaintiff has provided no explanation as to why amendment did not take place sooner, and where the delay in filing the motion to amend would cause delay and burden the parties." *Id.* at 775. Moutry possessed all the information pertinent to his amendment by the close of fact discovery. (*See* ECF No. 17 at 2-3.) Yet he, without explanation, waited more than three months and allowed Travelers to file its motion for summary judgment before moving for leave to amend. Now having peeked at his adversary's hand, he wants to drive this "litigation in a new direction." *See Allen v. Brown Advisory LLC*, 41 F.4th 843, 854 (7th Cir. 2022). Justice does not require this Court to grant him that opportunity. *See Kleinhans v. Lisle Savings Profit Sharing Trust*, 810 F.2d 618, 625 (7th Cir. 1987) (plaintiff's motion for leave to amend filed after defendants moved for summary judgment "represent[ed] an apparent attempt to avoid the effect of summary judgment"); *Cleveland v. Porca Co.*, 38 F.3d 289, 297-98 (7th Cir. 1994) (district court did not abuse its discretion in denying plaintiffs' leave to amend after discovery had closed and opposition had moved for summary judgment); *Bethany Pharmacal Co., Inc. v. QVC, Inc.*, 241 F.3d 854, 861 (7th Cir. 2001) (holding that the district court could have denied leave to amend on grounds of undue delay because the plaintiff did not move for leave to amend until after the defendant moved for summary judgment, and the plaintiff knew the factual basis for the proposed amendment well ahead of time); *Johnson v. Methodist Med. Ctr. of Ill.*, 10 F.3d 1300, 1304 (7th Cir. 1993) (district court properly denied leave to amend when plaintiff waited to move for leave to amend until she "realized that she would lose based on" the defendant's summary judgment briefing).

Moutry's attempt to reframe this case after the dispositive motion deadline represents the kind of last-minute, prejudicial conduct that courts have routinely maligned. His motion to amend is, therefore, denied.

## CONCLUSION

This is a case of compounding unfortunate events. First a fire and then a failure to satisfy the insurance policy that would have provided coverage. But not every rotten break has a legal remedy. Under the insurance policy at issue, Travelers had a right to deny coverage to Moutry. No reasonable jury could conclude otherwise. Further, Moutry's last-minute gambit to avoid defeat by amending his complaint is untimely and unfairly prejudicial.

Accordingly,

**IT IS HEREBY ORDERED** that Moutry's Motion for Leave to File an Amended Complaint, ECF No. 16, is **DENIED**.

**IT IS FURTHER ORDERED** that Travelers' Motion for Summary Judgment, ECF No. 15, is **GRANTED**, and the case is **dismissed**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on February 15, 2023.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge